IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
LINDA PEARL
                              *
     Plaintiff,

v.                            *      CIVIL NO.: WDQ-04-3794
UNITED INSURANCE COMPANY
OF AMERICA                    *

     Defendant.               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

   Linda Pearl sued her former employer United Insurance
Company of America ("United") for unlawful discrimination and
retaliation in violation of Title VII of the Civil Rights Act of
1964 ("Title VII")[1] and the Age Discrimination in Employment Act
("ADEA")[2]. Pending is United's motion for summary judgment. For
the following reasons, United's motion for summary judgment will
be granted.

I.  BACKGROUND

   In 1998, Pearl, a 61 year old Caucasian female, began
working for United as a clerical administrator. *See* Complaint
at ¶9. In August 2002, Pearl was transferred from District 168
to District 174. *See* Complaint at ¶13; *See also* Def. Mot. Summ.

---

  [1]42 U.S.C. §§ 2000e *et seq.* (2005).

  [2]29 U.S.C. §§ 206 *et seq.* (2005).

1

J. Exh. 1. at p. 37.  Five months after her transfer, Pearl was promoted to Senior Administrator.  *See* Def. Mot. Summ. J. Exh. 2 at ¶5; Exh. 3 at ¶8.

Stanley Fair, an African-American male, was Pearl's District Manager.  *See* Def. Mot. Summ. J. Exh. 3. at ¶3.  Susan White, a Caucasian female, was Pearl's direct supervisor.  *See* Def. Mot. Summ. J. Exh. 2 at ¶2.  As her supervisor, White made all final personnel decisions, subject to the Field Support Manager and Human Resources' approval.  *See id.* at ¶4.

From the beginning of her tenure as Senior Administrator, Pearl experienced performance problems.  For example, Pearl had difficulties in effectively leading the other administrators and cross-training them on tasks.  *See* Def. Mot. Summ. J. Exh. 2 at ¶7.  She complained to White about the other administrators' performance and blamed them for all the district's problems.  *See id.* at ¶21.  White, however, felt that as the leader, Pearl should have taken more personal responsibility for her staff's actions.  *See id.* at ¶9. Fair, as well, as others constantly complained about Pearl's negativity, rudeness, and poor performance.  *See* Def. Mot. Summ. J. Exh. 2 at ¶13; Exh. 3 at ¶¶15-16;  Exh. 4 at ¶¶5-6, Exh. 5 at ¶¶5-6, 9-10, 12,15; Exh. 6 at ¶¶5-7, 10; Exh. 7 at ¶¶5-6,9.

2

Contrary to White and Fair's directives, Pearl visited her former district. *See* Def. Mot. Summ. J. Exh. 2 at ¶¶12,14; Exh. 3 at ¶¶12, 14.   Pearl's visits were seen as a distraction to her staff, because she often was not at her desk when she was needed.  *See* Def. Mot. Summ. J. Exh. 3 at ¶10; Exhibit 5 at ¶7; Exhibit 6 at ¶8.   There was also a general perception among employees at both districts that during her visits, Pearl spoke negatively about District 174.  *See* Def. Mot. Summ. J. Exh. 3 at ¶12.

On May 9, 2003, White provided Pearl with an oral warning regarding her negativity and unauthorized visits to District 168. *See* Def. Mot. Summ. J. Exh. 2 at ¶14.  From her observation of Pearl's continued poor performance and negative attitude,  White  gave Pearl written reprimands in June and August 2003.  *See* Def. Mot. Summ. J. Exh. 2 at ¶15; Exh. 8. After the August reprimand, Pearl was demoted and placed on a six month probation.   *See* Def. Mot. Summ. J. Exh. 2 at ¶20. Pearl had previously been placed on a three month probation in her former district.  *See* Def. Mot. Summ. J. Exh. 1 at pp. 15-16.

On August 11, 2002, Ms. Jones, an African-American female in her 30's, became the new Senior Administrator.  *See*

Plain. Opp. Exh. 1 at ¶16.  *See also* Def. Mot. Summ. J. Exh. 2 at ¶23; Exh. 3 at ¶19.  Two days later, Jones and Pearl had an altercation in which Jones used the word "nigger".  *See* Plain. Opp. Exh. 1 at ¶22.  *See also* Def. Mot. Summ. J. Exh. 3 at ¶21. On August 14, Pearl reported the incident to Kenneth Oehler, the Vice-President of Human Resources.  *See* Plain. Opp. Exh. 1 at ¶24.  Whether United reprimanded Jones for her use of the racial slur is disputed.  *See id.* at ¶¶23-24.  *But see* Def. Mot. Summ. J. Exh. 2 at ¶25, Exh. 3 at ¶23.

As Pearl's poor performance continued in August, White recommended that she be terminated.  *See* Mot. Summ. J. Exh. 2 at ¶21.  On August 26, Nina Williams, the Field Support Manager, and Oehler accepted this recommendation and Pearl was terminated.  *See id.* at ¶¶21-22; Exh. 10 at ¶¶8-9.  Pearl was replaced by a 61 year old Caucasian female.  *See* Def. Mot. Summ. J. Exh. 2 at ¶28.

On September 23, 2003, Pearl filed a complaint with the Maryland Human Relations Commission and the United States Equal Employment Opportunity Commission ("EEOC").  The EEOC subsequently issued Pearl a right to sue letter.  On November 20, 2004, Pearl initiated this suit alleging retaliatory discharge and race and age discrimination.

## II. LEGAL DISCUSSION

4

A.   Motion for Summary Judgment

      1. Standard of Review

      Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.* at 248. Thus, "the judge must ask... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Id.* at 252.

      The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is not sufficient to preclude summary judgment. *Anderson*, 477 U.S. at

252.

    2.   Demotion based upon Age

    Pearl contends that her demotion was based upon her age.

Under the ADEA, it is unlawful for an employer...."to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. § 623 (a)(1).

    To establish a prima facie case of age discrimination, the plaintiff must prove that:(1) she is at least 40 years old; (2) she suffered an adverse job action; (3)her performance met her employer's expectations; and (4) she was replaced by someone who was either outside of the protected class or substantially younger. *O'Connor v. Consolidated Coin Caterers, Corp.*, 517 U.S. 308, 312 (1996).  Pearl's claim must fail because she cannot establish the third element of her prima facie case.

    There is overwhelming evidence of Pearl's poor work performance.  Pearl's unsupported assertions that she was performing adequately cannot create a genuine dispute of material fact. *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) ("unsupported speculation is not sufficient to defeat a summary judgment motion").  Accordingly,

Pearl's ADEA claim must fail.

    3.  Discriminatory Discharge under Title VII

    Pearl also contends that she was discharged because of her race.  Title VII provides that it "shall be an unlawful employment practice for an employer... to discriminate against any individual with respect to her....terms, conditions, or privileges of employment, because of such individual's race or sex...." 42 U.S.C. § 2000e-2(a).

    To establish a prima facie case of discriminatory discharge,  the plaintiff must prove that:(1) she is a member of a protected class; (2) she was qualified for her job and her performance was satisfactory; (3) she was discharged; and (4) similarly situated employees who are not members of the protected class did not receive adverse action under similar circumstances. *Karpel v. Inova Health System Serv.*, 134 F.3d 1222, 1228 (4th Cir. 1998).  The Plaintiff's discriminatory discharge claim also fails because as stated above, she has failed to offer any evidence that  her job performance was satisfactory.

    4.  Retaliation

    To prevail on a retaliation claim under Title VII, Pearl must establish, by a preponderance of the evidence, that (1) she engaged in a protected activity; (2) United took an adverse

employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4ᵗʰ Cir. 2001).

Pearl contends that United's decision to terminate her shortly after she reported Jones' racist remark establishes a causal connection, thereby creating an inference of retaliation. When "timing is the only basis for a claim of retaliation and gradual adverse job actions began well before the plaintiff engaged in protected activity, an inference of retaliation does not arise." *Hunter v. St. Francis Hospital*, 281 F.Supp.2d 534, 547 (E.D.N.Y. 2003) (citing *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). *See also Martin v. Montgomery*, 223 F.Supp.2d 742, 744 (D. Md. 2002) (no causal connection when plaintiff received poor performance evaluations before filing discrimination charge); *Nichols v. Harford County Bd. of Educ.*, 189 F.Supp.2d 325, 345 (D. Md. 2002) (no causal connection when cause of adverse employment action occurred before protected activity).

The evidence is that United criticized Pearl's work performance before she engaged in protected activity. As no reasonable jury could find that Pearl's termination was in retaliation for her reporting the racial slur, summary judgment is appropriate.

### III. CONCLUSION

For the reasons discussed above, United's motion for summary judgment will be granted.


July 19, 2005                    _____/s/_____
Date                             William D. Quarles, Jr.
                                 United States District Judge